Filed 8/14/26  P. v. Toca CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D088035 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. RIF2206174) |
| JONATHAN COLE TOCA, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Riverside County, Charles G. Rogers, Judge.  (Retired Judge of the San Diego Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.) Affirmed in part, reversed in part, and remanded with instructions.

Marta I. Stanton, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Arlene A. Sevidal, Assistant Attorney General, Christine Y. Friedman and Joshua Trinh, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Jonathan Cole Toca of numerous counts, including, as relevant here, being a felon in possession of a firearm (Pen. Code, § 29800,

subd. (a)(1); count 3), being a felon in possession of ammunition
(§ 30305(a)(1); count 4), and resisting a peace officer (§ 148(a)(1); count 12).
The court sentenced Toca to a cumulative prison term of seven years and four
months, including eight months consecutive for each of the possession counts
and one year concurrent for count 12.

Toca contends his conviction of count 12 must be reversed due to
insufficient evidence that he willfully resisted or delayed arrest. We conclude
adequate evidence supports the conviction given Toca disobeyed repeated
commands to exit the residence where he hid from law enforcement.

Toca further argues the court should have stayed his eight-month
sentence for count 4 under section 654. On this record, we agree. The sole
objective in possessing the firearm (count 3) and the ammunition (count 4)
was to have an operable firearm. Accordingly, the possession offenses were
part of an indivisible course of conduct and cannot be separately punished.

We thus affirm in part, reverse in part, and remand with instructions.

I.

On December 10, 2018, a team of 15 to 20 peace officers executed a
search warrant on a property in an unincorporated area of Riverside County.

After surrounding the residence on the property, the search warrant
team made public address announcements for three to five minutes, alerting
the occupants that law enforcement had them surrounded and ordering them
to "'[c]ome out with your hands up.'" Two people exited the house upon
hearing the announcements and informed the officers that other people
remained inside.

Another person opened a door, saw the officers outside, and went back
inside the residence. Officers broke the windows of a billiard room with
beanbag rounds and then fired pepper-ball rounds into the room to "cause

2

discomfort to get that person to comply and come back out." Three more people and a dog exited the residence.

Officers used a ram to force entry into the house. Officers went room by room to clear the residence as part of a "safety sweep." Toca was found hiding in the cabinets underneath the kitchen sink. Once officers located him, Toca complied with their directives and did not try to fight or pull away from them.

The officers discovered numerous stolen vehicles on the property. In the billiard room, they found counterfeit currency and equipment for manufacturing it.

In a dresser drawer within the billiard room, officers located "several" .22 caliber rounds. They also discovered a .22 rifle leaning against the wall by the dresser.

II.

A.

Toca contends his conviction of count 12 (resisting a peace officer) must be reversed for insufficient evidence that he willfully resisted or delayed arrest. We disagree.

We review a challenge to the sufficiency of the evidence for substantial evidence. In doing so, we examine the entire record in the light most favorable to the prosecution to determine if a rational factfinder could find the essential elements of the crime beyond a reasonable doubt. (*People v. Zamudio* (2008) 43 Cal.4th 327, 357.) Substantial evidence is reasonable, credible evidence of solid value, even if circumstantial. (*Ibid.*) "Conflicts and even testimony [that] is subject to justifiable suspicion do not justify" reversal. (*People v. Maury* (2003) 30 Cal.4th 342, 403.) We will not reverse

3

unless under "no hypothesis" whatsoever could substantial evidence support the jury's verdict. (*Zamudio*, at p. 357 [cleaned up].)

Toca claims his conviction "was based on speculation that appellant was hiding under the sink to willfully delay" the officers. He contends he "was not resisting or delaying arrest when he panicked, ducked, and covered under the sink to avoid the pepper balls during the chaos of the shooting of the pepper balls through the windows, the loud noises, sirens, commands, dogs barking and the battering down of the door." He invokes cases that "have held that there is insufficient evidence to support a finding of willfully resisting or delaying arrest where the defendant was merely running away out of fear or was slow to comply with an officer's orders."

The People counter that the evidence of willfully resisting or delaying arrest is substantial. For three to five minutes, law enforcement officers announced their presence and ordered Toca and the other occupants of the residence to come out with their hands up. Multiple occupants exited the residence, allowing a reasonable jury to infer that Toca and other occupants of the residence could hear the officers and were willfully disobeying by refusing to exit. The police then fired beanbag and pepper-ball rounds into the house to further encourage compliance. This action resulted in multiple other occupants exiting the residence. At that point, Toca alone was left inside the residence. To detain him, officers had to break down a door and go room to room until they found him hiding under the sink. On these facts, we agree with the People that a reasonable jury could conclude Toca disobeyed orders to exit the house and hid to avoid the possibility of arrest. While Toca immediately complied once he was located, it took officers time and significant effort to apprehend him so they could execute the search warrant given his evasive actions.

4

The cases Toca invokes are distinguishable. For example, he cites *People v. Gresham* (2025) 113 Cal.App.5th 59, 66, which quotes *People v. Lopez* (1986) 188 Cal.App.3d 592, 598, for the proposition that "'[m]erely running away from someone is not resisting arrest.'" But the quotation is selective. The issue in *Gresham* and *Lopez* was the defendant's *knowledge* that the person in question was a police officer. *Lopez* thus went on to state that "[r]unning from a plainclothes officer who does not identify that he or she is an officer could not, for instance, be a crime." (*Lopez*, at p. 598.) But Toca does not claim he did not know the people surrounding the residence were law enforcement officers. And as other cases make clear, "[p]hysical resistance, hiding, or running away from a police officer, as well as refusing an officer's repeated requests, can constitute a violation of section 148." (*In re Charles G.* (2017) 14 Cal.App.5th 945, 956; *People v. Flannelly* (1900) 128 Cal. 83, 87 ["Flight . . . is resistance to arrest."].)

Similarly, in *People v. Quiroga* (1993) 16 Cal.App.4th 961, 966, the court of appeal concluded that "it surely cannot be supposed that Penal Code section 148 criminalizes a person's failure to respond with alacrity to police orders." But there is a difference between failing to comply quickly and, as the evidence established here, actively hiding from officers while they announce their presence and order everyone to exit the residence for multiple minutes, shoot pepper-ball rounds into the residence, and ram in the door.

In short, this record contains substantial evidence Toca willfully delayed or obstructed peace officers in their attempt to discharge the execution of the search warrant on the property by hiding instead of following orders to exit the residence with his hands up. (See *Quiroga*, 16 Cal.App.4th at p. 972 ["[I]t may indeed be possible to violate Penal Code section 148 by

5

delaying execution of a warrant."].)  Reversal of count 12 is thus unwarranted.

B.

Toca also argues the court erred under section 654 in sentencing him to a consecutive eight-month term on count 4 rather than staying the sentence. On this record, we agree.

During Toca's sentencing hearing, the court concluded that because the .22-caliber ammunition was not loaded into the .22 rifle, section "654 does not prohibit a separate punishment."  And because "possession of ammunition increases the ability to use the firearms and the danger," the court imposed sentences of one-third the middle term, or eight months, for each of counts 3 and 4.

Section 654(a) protects against multiple punishment where the crimes arise from either (1) the same act or omission or (2) an indivisible course of conduct united by a single intent and objective.  (*People v. Harrison* (1989) 48 Cal.3d 321, 335.)  "Whether a course of conduct is indivisible depends upon the intent and objective of the actor."  (*People v. Perez* (1979) 23 Cal.3d 545, 551.)  "If all the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one."  (*Ibid.*)  "On the other hand, if the evidence discloses that a defendant entertained multiple criminal objectives which were independent of and not merely incidental to each other, he may be punished for the independent violations committed in pursuit of each objective even though the violations were parts of an otherwise indivisible course of conduct."  (*Ibid.*)  "A trial court's implied finding that a defendant harbored a separate intent and objective for each offense will be upheld on appeal if it is supported by substantial evidence."  (*People v. Blake* (1998) 68 Cal.App.4th 509, 512.)

6

"Courts have found section 654 prohibits punishing a defendant for both being a felon in possession of a firearm and unlawful possession of ammunition when all of the ammunition in question was loaded into the firearm or had been fired from it." (*People v. Broadbent* (2020) 47 Cal.App.5th 917, 922.)  Here, the .22-caliber rifle giving rise to count 3 and the same-caliber ammunition giving rise to count 4 were found in close proximity to each other.  Toca argues "[t]he only difference between this case and" *Broadbent* and similar cases is that he "safely stored the firearm separately, but in the same room as the ammunition."  He contends "[t]his difference is immaterial and does not demonstrate separate intents and objectives."

We agree that drawing a distinction on this basis "parse[s] the objectives too finely." (*People v. Lopez* (2004) 119 Cal.App.4th 132, 138.)  We find it odd that section 654 categorically bars multiple punishment when a defendant carries or possesses a loaded weapon but, under the People's argument, would permit multiple punishment if a defendant stores the firearm in close proximity to its ammunition.

We are unconvinced by the People's conclusory claim that "there is substantial evidence from which the trial court could conclude [Toca] harbored a separate intent to possess the ammunition."  The People offered no evidence Toca had different objectives in possessing the two different types of contraband.  Rather, in this circumstance, with the ammunition located so close to the same-caliber rifle, the only reasonable inference was that Toca intended to have an operational firearm.  As the People argue, Toca may not have had the intent to have "an immediately operational firearm," but requiring immediacy again appears to "parse the objectives too finely." (*Lopez*, 119 Cal.App.4th at p. 138.)

Because the record is devoid of evidence to support the court's implicit finding that Toca harbored two different objectives in possessing both a rifle and nearby compatible ammunition, we conclude on this record that section 654 precludes multiple punishment for Toca's possession of a firearm as well as "several" rounds of ammunition just feet away.  We therefore modify the judgment to stay the eight-month sentence for the possession of ammunition conviction on count 4.  Although not raised by the parties, section 1170.1(a)'s one-third the middle term rule does not apply to a sentence stayed under section 654.  (See *People v. Relkin* (2016) 6 Cal.App.5th 1188, 1197-1198.)  Exercising our inherent authority to correct unauthorized sentences, we thus further modify the stayed sentence on count 4 to be a full, two-year, concurrent middle term rather than one-third that term.  (See *ibid.*)

## III.

We affirm the judgment of conviction as to count 12, reverse the consecutive sentence for count 4, and modify the judgment to stay a concurrent two-year middle-term sentence on count 4 under section 654. We direct the trial court to prepare an amended abstract of judgment reflecting this modification and to forward a certified copy of the same to the Department of Corrections and Rehabilitation.

CASTILLO, J.

WE CONCUR:

DO, Acting P. J.

RUBIN, J.

9